**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

DOUGLAS E. BROWN,

      Defendant-Appellee.

Nos. 97-4165, 97-4183

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 95-CR-245-B)**

---

Paul T. Moxley and Catherine L. Brabson, Moxley Jones & Campbell L.C., Salt Lake City, Utah, for Defendant-Appellant.

Scott J. Thorley, Assistant United States Attorney (David J. Schwendiman, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

      Defendant Douglas Brown pleaded guilty to securities fraud, being an unregistered broker-dealer, and wire fraud stemming from the sale of American securities to investors

in Germany. He now appeals the denial of his motion to dismiss portions of the indictment for lack of subject matter jurisdiction. The government cross-appeals the district court's loss calculation under the Sentencing Guidelines. We have jurisdiction, 28 U.S.C. § 1291; 18 U.S.C. § 3742(b), and affirm.

## I

This case involves the fraudulent sale of American securities to investors in Germany. The grand jury returned a 255-count superseding indictment against Douglas Brown, Hans Kuhlen, and others, charging them with conspiracy, securities fraud, transacting in securities while not registered as broker-dealers, wire fraud, and money laundering. The indictment alleges in pertinent part that, from Utah, Mr. Brown created companies and stocks without substance, provided those stocks for resale in Germany through Mr. Kuhlen and others, misrepresented the value of those stocks to support their sale, and transferred the proceeds of the fraud from Germany to Utah.

Mr. Brown moved to dismiss the securities counts of the indictment for lack of subject matter jurisdiction. *See* Fed. R. Crim. P. 12(b). Relying on the allegations of the indictment, Mr. Brown claimed that much of the conduct occurred in Germany and thus outside the territorial jurisdiction of the United States criminal laws. The district court held a hearing and denied the motion. The court reasoned that the "allegations contained in the superseding [indictment were] enough to find that [the court] has jurisdiction." Mr.

Brown then pleaded guilty, unconditionally and without a plea agreement, to one count each of securities fraud, 15 U.S.C. § 78j(b), transacting in securities while not registered with the Securities and Exchange Commission as a broker-dealer, *id.* § 78*o*(a)(1), and wire fraud, 18 U.S.C. § 1343. The government sought and obtained dismissal of the remaining counts of the indictment.[1]

During the sentencing phase, the district court held a two-day evidentiary hearing to determine, among other things, the relevant conduct and loss for which Mr. Brown would be held accountable. The district court calculated the loss according to the $650,000 Mr. Brown gained from the scheme, instead of the $18-25 million in actual loss to the victims the government had urged. In doing so, the court concluded that the government had failed to prove by a preponderance of the evidence that Mr. Kuhlen's activities in Germany, and the concomitant losses, constituted relevant conduct for which Mr. Brown must be held responsible. The court stated:

> The loss has been difficult for me to calculate. The government wants me to look at $25 million. And loss, to a large extent, determines the sentence. . . . [T]he gain to [Mr. Brown], personally, was only 650,000 or something like that. I'm going to take that figure and find that the government has not proved, by a preponderance of the evidence at this sentencing hearing, that Mr. Brown, for purposes of sentencing, should be linked with that entire loss amount [of $25 million]. [¶] It does appear to me that Mr. Kuhlen was the mastermind behind this criminal enterprise, that he conned a lot of

---

[1]Only the counts to which Mr. Brown pleaded guilty are presently before the Court. The dismissal of the remaining counts rendered them a moot issue on Mr. Brown's appeal. *United States v. Rodriguez-Aguirre*, 73 F.3d 1023, 1025 (10th Cir. 1996).

people, and he was the driving force. . . . For those reasons, and because I haven't heard anyone show me, with a direct link, that Mr. Brown was in Germany making those misrepresentations[,] for purposes of sentencing only, and only for purposes of the loss amount, I'm willing to indulge the argument of defense that the loss is above 600,000 and not above 25,000,000.

The court sentenced Mr. Brown to 42 months in prison, a $250,000 fine, and three years of supervised release. Both parties timely appealed.

## II

Mr. Brown claims the district court lacked subject matter jurisdiction over the federal securities and wire fraud offenses[2] because the bulk of the illegal conduct allegedly occurred in Germany. He argues the "laws under which he was indicted and sentenced do not apply extraterritorially unless conduct occurred in the United States that directly caused the loss." We review Mr. Brown's challenge to the district court's jurisdiction de novo, *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996), and reject it because the indictment alleged his criminal activity occurred within the United States and he admitted as much when he pleaded guilty unconditionally.

Subject matter jurisdiction initially vested in the district court upon the filing of the superseding indictment in this case. The indictment charges Mr. Brown with offenses

---

[2]Mr. Brown challenges the reach of the wire fraud statute for the first time on appeal. Nevertheless, because the argument pertains to the district court's jurisdiction, we deem it appropriate to address it. *United States v. Angelo*, 88 F.3d 856, 860 n.2 (10th Cir. 1996); *United States v. Bustillos*, 31 F.3d 931, 933 (10th Cir. 1994).

against the United States in language similar to the securities and wire fraud statutes. It

alleges the locale of the offenses in general terms--the criminal activity took place "in the

Central Division of the District of Utah and elsewhere"--and in many instances,

specifically links the purported violations to Mr. Brown's activities in Utah. For

example, Mr. Brown is alleged to have incorporated bogus companies in Utah and

Nevada; mailed on a regular basis documents to and from his offices in Utah; conducted

telephone and facsimile communications between Germany and Utah; and wire

transferred fraudulently obtained money from Germany to Utah. Because the indictment

recited the necessary jurisdictional facts, and the contrary has not been shown or argued

upon its face,[3] nothing more was required to initially confer subject matter jurisdiction.

18 U.S.C. § 3231; *United States v. Perea*, 413 F.2d 65, 67 (10th Cir. 1969); *Young v.*

---

[3]In his brief, Mr. Brown sought to belie the indictment's allegations of the location of the crimes by relying on affidavits and evidence extrinsic to the indictment. This is something he may not do. Generally, an indictment is to be tested "solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994); *see also United States v. Caicedo*, 47 F.3d 370, 371 (9th Cir. 1995); *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978). The only recognized exception to this rule–where the extrinsic facts are undisputed and neither party objects, *Hall*, 20 F.3d at 1088–is inapplicable here.

At oral argument, counsel then sought to expand this appeal by arguing the superseding indictment on its face was not "specific enough with respect to the conduct that occurred in the United States." This challenge to the precision of the superseding indictment, which was neither raised at the trial court nor (more importantly) briefed on appeal, comes too late to merit our attention. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995); *Durham v. Xerox Corp.*, 18 F.3d 836, 841 n.4 (10th Cir. 1994). We further note the issue was only mentioned in passing at oral argument and no effort was made to advance any reasoned argument on the matter.

*United States*, 354 F.2d 449, 452 (10th Cir. 1965); *Head v. Hunter*, 141 F.2d 449, 451 (10th Cir. 1944); *United States v. Stoddard*, 875 F.2d 1233, 1236-37 (6th Cir. 1989); *United States v. Desurra*, 865 F.2d 651, 654 (5th Cir. 1989); *United States v. Romero-Galue*, 757 F.2d 1147, 1150 n.10 (11th Cir. 1985).

Jurisdiction remained with the district court through the entry of judgment because Mr. Brown pleaded guilty unconditionally to the offenses at issue. Counsel asserted at oral argument that, during the plea hearing, Mr. Brown was "very careful" not to admit any conduct occurred within the United States. Although that may have been his intent, the strategy failed to realize the unconditional plea admitted all material allegations *already contained* in the superseding indictment, including the allegations that Mr. Brown's criminal activity occurred in Utah. An unconditional plea of guilty is an admission of all material facts alleged in the charge, *United States v. Broce*, ___ U.S. ___, 109 S. Ct. 757, 762 (1989); *United States v. Powell*, 159 F.3d 500, 503 (10th Cir. 1998), including those facts that serve as factual predicates to subject matter jurisdiction. *United States v. Eason*, 133 F.3d 933, 1998 WL 8224, at *1 (10th Cir. 1998) (unpublished disposition); *United States v. Richard*, 37 F.3d 1510, 1994 WL 548964, at *2 (10th Cir. 1994) (unpublished disposition); *Valencia v. United States*, 923 F.2d 917, 921 (1st Cir. 1991); *Mack v. United States*, 853 F.2d 585, 586 (8th Cir. 1988); *United States v. Mathews*, 833 F.2d 161, 163-64 (9th Cir. 1987); *Hayle v. United States*, 815 F.2d 879, 881-82 (2d Cir. 1987); *United States v. Hoyland*, 264 F.2d 346, 351-53 (7th

Cir. 1959). Therefore, omitting discussion of the place of the crime at the plea hearing was inconsequential. By pleading guilty, Mr. Brown established facts sufficient by operation of law to maintain subject matter jurisdiction through the entry of judgment. *Mathews*, 833 F.2d at 164.

**III**

The government cross-appeals the district court's loss calculation under the Sentencing Guidelines. The district court relied on Mr. Brown's $650,000 gain, instead of the $18-25 million in actual loss to the victims the government had urged. The government challenges both legal and factual aspects of the district court's conclusion. We review the former de novo and the latter for clear error, *United States v. Fox*, 999 F.2d 483, 485 (10th Cir. 1993), and reject each contention.

The government first argues the district court erred when it failed to make explicit findings explaining why Mr. Brown's gain was a reasonable estimate of the victims' losses. *See* 1995 U.S.S.G. § 2F1.1 n.8 (using gain as measure of loss is permissible so long as the gain is a "reasonable estimate of the loss"). This claim is tantamount to a belated Rule 32(c)(1) objection. Fed. R. Crim. P. 32(c)(1).

Rule 32(c)(1) provides that when a defendant or the government objects to a matter in the presentence report, the court "must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be

taken into account in, or will not affect, sentencing." *Id.* Ordinarily, when a district court fails to comply with this rule we must remand for the court to either make the necessary findings or enter a declaration that the controverted matters are inconsequential. *United States v. Romero*, 122 F.3d 1334, 1344 (10th Cir. 1997), *cert. denied*, 118 S. Ct. 1310 (1998); *United States v. Pedraza*, 27 F.3d 1515, 1530-31 (10th Cir. 1994).

A remand is unnecessary here, however, because the record demonstrates the government chose not to ask the trial court to explicate its reasons pursuant to Rule 32(c)(1). The government's failure to previously raise a Rule 32(c)(1) objection limits our review to noticing plain error. Fed. R. Crim. P. 52(b). And because we have already held the failure to make specific findings under Rule 32(c)(1) does not rise to the level of obvious and substantial error, *United States v. Williamson*, 53 F.3d 1500, 1527 (10th Cir. 1995) (discussing Fed. R. Crim. P. 32(c)(3)(D), predecessor to Rule 32(c)(1)), we need not proceed any further on this issue.

The government next contends the district court erred as a matter of law when it used Mr. Brown's gain to determine the loss because the amount of his gain was incommensurate to the purported actual loss to the victims of $18-25 million. The government reads *United States v. Haddock*, 12 F.3d 950 (10th Cir. 1993), to state that where the actual loss is high and the measure of gain is disproportionately lower, then the gain is a per se unreasonable estimate of the loss. *Haddock* and its progeny say nothing of the sort. Rather, our cases state that relying on a defendant's gain is per se

unreasonable only when the actual or intended loss is *non-existent*. ***Id.*** at 960-61; ***United States v. Galbraith***, 20 F.3d 1054, 1060 (10th Cir. 1994). The government does not, of course, advance such an argument.

The government's third and final contention is the district court erred when it found that Mr. Kuhlen's activities in Germany, and the losses those activities created, did not constitute relevant conduct attributable to Mr. Brown. The Guidelines provide that loss calculations shall be determined, in the case of a jointly undertaken criminal activity, on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." 1995 U.S.S.G. § 1B1.3(a)(1)(B); ***see also United States v. Melton***, 131 F.3d 1400, 1405 (10th Cir. 1997).[4] The government argues, contrary to the district court's conclusion, that it proved by a preponderance of the evidence that the entire $18-25 million in actual losses resulted from reasonably foreseeable acts or omissions of Mr. Kuhlen in Germany.

Our review of the record leads us to conclude there is ample evidence to support the district court's conclusion that many of Mr. Kuhlen's acts in Germany could not have

---

[4]Although the district court did not expressly state that Mr. Kuhlen's activities in Germany were not relevant conduct under section 1B1.3, we assume the district court performed the proper review because there is no evidence to suggest the contrary. ***Green v. Branson***, 108 F.3d 1296, 1305 (10th Cir. 1997).

been reasonably foreseen by Mr. Brown. The evidentiary hearing revealed that "Mr. Kuhlen was the mastermind behind this criminal enterprise . . . [and] the driving force." Mr. Brown had little if any input regarding Mr. Kuhlen's activities in Germany; he rarely contacted (and never directly supervised) the sales persons in Germany; he was not otherwise involved with or in control of the sales practices of the German operations; and he was kept in the dark by Mr. Kuhlen with respect to many activities in Germany.

Although the government proffers affidavits to contradict the district court's findings, we conclude that at most those affidavits presented the district court with an alternate, permissible account of events. The district court found one version more credible than the other, as it is within its power to do.

**IV**

The judgment of the district court is **AFFIRMED**. The district court had subject matter jurisdiction over Mr. Brown's offenses and applied the Sentencing Guidelines within the bounds of its discretion.