**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

   v.

IRVIN CHRISTOPHER McHENRY,
BOBBY VERNON McHENRY,

  Defendants - Appellants.

No. 98-5239 & 98-5255
(D. Ct. No. 97-CR-9-B)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**   *

---

Before **TACHA** , **ANDERSON** , and **EBEL** , Circuit Judges.

---

  After examining the briefs and the appellate record in   United States v. Bobby Vernon McHenry , No. 98-5255, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Case No. 98-5255 is therefore ordered submitted without oral argument. We have heard oral argument in   United States v. Irvin Christopher McHenry   , No. 98-5239.

---

 *This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Background

In 1997, defendant Irvin Christopher McHenry ("Chris") and his brother, defendant Bobby Vernon McHenry ("Bobby"), were tried for transporting stolen property in interstate commerce. The jury was unable to reach a verdict, and the trial judge declared a mistrial. The McHenrys were tried again, and the second trial also ended in a mistrial. After a third trial, a jury convicted both Chris and Bobby of one count of conspiracy to transport stolen goods in interstate commerce in violation of 18 U.S.C. § 371. In addition, the jury convicted Bobby of two counts of interstate transportation of stolen goods in violation of 18 U.S.C. §§ 2314 and 2(b). Both defendants appealed.

We treat defendants' appeals together in a single, consolidated opinion because they stem from a common set of facts. See Fed. R. App. P. 3(b). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and affirm.

## II. Chris McHenry

On appeal, Chris argues that the district court committed reversible error when it dismissed sua sponte a jury venire member for cause.[1] During voir dire at the third trial, the following exchange took place:

---

[1]Chris also argues that the district court acted improperly when it admitted evidence of uncharged acts against him. Because Bobby makes the same argument, we address their claims together in part IV.

> THE COURT: Have any of you ladies and gentlemen ever heard anything about this case before arriving here today, directly or indirectly? Any of you heard anything about the case whatsoever? Ms. Magness, is that your hand that's up?
>
> VENIREPERSON MAGNESS: Yes.
>
> THE COURT: All right. I don't want to get in very particularly with how you know something about this. I see you are from Catoosa.
>
> VENIREPERSON MAGNESS: Yes.
>
> THE COURT: As a result of that, since some of the alleged events and perhaps the defendants have some roots or ties there in Catoosa, is that the way in which you heard about this matter?
>
> VENIREPERSON MAGNESS: Yes, sir.
>
> THE COURT: Very well. I appreciate, Ms. Magness, your calling that to our attention, and with that, I won't get into it any further with you, I'll just simply excuse you . . . .

Trial Tr. at 29-30.

After this exchange, Chris's lawyer, Robert Durbin, objected to the trial court's dismissal of Magness simply because she had some knowledge of the case. Durbin asked the judge to inquire further about her knowledge, and the judge called Magness to the bench. A second exchange then took place outside the presence of the jury panel.

> THE COURT: Ms. Magness, before excusing you specifically I wanted to ask you a few questions about how you are acquainted with this case, either directly or indirectly. Can you tell me a little bit about that?
>
> VENIREPERSON MAGNESS: Just that, you know, it's been in our local newspaper, and I know he's on the city council, Bobby was.
>
> THE COURT: I see.
>
> VENIREPERSON MAGNESS: But knowing them personally, I don't. Just being from the neighborhood.

THE COURT: All right. As a result of what has been in the paper have you heard it discussed places and comments made about the case? Anything like that?

VENIREPERSON MAGNESS: Yes, just–but not–just with . . . local people . . . . I know the mayor of Catoosa, and not that we've really discussed it, but . . . it's just been–well, I really don't know nothing in depth . . . .

THE COURT: I see. Is there anything about your prior knowledge of it or your living there in Catoosa that would interfere with your being a juror in this case, you think?

VENIREPERSON MAGNESS: No.

THE COURT: In any way?

VENIREPERSON MAGNESS: I don't think so.

THE COURT: All right. Do you know anything about the matter? Would you prefer not to sit on this case just because of the nature of it or your prior knowledge of it, although indirectly as you stated?

VENIREPERSON MAGNESS: As far as the charges go, . . . I've read them in the newspaper but . . . I didn't have an opinion one way or the other . . . . really–

THE COURT: Anything about it that would interfere with your sitting on the case?

VENIREPERSON MAGNESS: I don't think so.

THE COURT: You think you could be a good, fair juror for each side?

VENIREPERSON MAGNESS: I think so.

THE COURT: Have you had occasion to be acquainted with either of the defendants?

VENIREPERSON MAGNESS: No, sir.

THE COURT: Have you had occasion to vote for either of the defendants? Are they in your district?

VENIREPERSON MAGNESS: No.

THE COURT: He represents a district other than where you live?

VENIREPERSON MAGNESS: Yes.

THE COURT: Any other questions you would like for me to ask Ms. Magness? First, the government?

MR. LEWIS: Judge, I might ask that you inquire into the relationship with the mayor, and if the mayor has ventured

- 4 -

any opinions about the defendant, what type of person–

THE COURT: I understand you're acquainted with the mayor?

VENIREPERSON MAGNESS: Yes.

THE COURT: Has the mayor had any discussions with you about this?

VENIREPERSON MAGNESS: No, because we don't visit that much. Maybe, you know, just see in town, how are you and that sort of thing, so–he's never discussed it.

THE COURT: I think it will come out in the evidence in this case that this case has been tried a couple of times before.

VENIREPERSON MAGNESS: Yes.

THE COURT: And except by way of a technical mistrial, there was never any jury verdict rendered in the case at all, and that's the reason we'[r]e having to try it again. We're asking this jury to render a verdict ultimately in the case. In the two prior trials there was never any kind of verdict rendered. Did you follow those trials? Did you read anything about the results of those cases?

VENIREPERSON MAGNESS: Yes, I did read the results of them in the paper, but as far as following it I didn't. I just–you know. And anyone in our community that you recognize you kind of read about, and that's about all that I did.

THE COURT: Surely. Any further questions you would like to ask Ms. Magness?

MR. DURBIN: Your Honor, I might ask the Court to inquire of her whether or not she is aware of any relationship that may exist between the mayor and Bobby McHenry.

VENIREPERSON MAGNESS: No. Any relationship between Bobby McHenry and the mayor?

THE COURT: Between Bobby McHenry and the mayor.

VENIREPERSON MAGNESS: No, I don't know of any.

THE COURT: All right. Any other questions of Ms. Magness?

MR. WARD [counsel for Bobby McHenry]: Yes. Your Honor, I would just like to know what the mayor has said about the case.

VENIREPERSON MAGNESS: To me? Nothing. We haven't talked about the case.

THE COURT: All right. Any other questions?

MR. DURBIN: No, sir.

THE COURT: All right. Ms. Magness, I'm going to excuse you for cause, ma'am, and mainly the reason I am is that you apparently have followed those other two cases somewhat in the newspapers and the press, and I think it best that we have some minds that don't have that information or didn't follow them that closely, and hopefully we can get some people who have never heard of this case before. I think we'll be a little better off that way. So I'll excuse you . . . .

Trial Tr. at 31-35. After the judge excused Magness for cause, defense counsel again objected to her dismissal.

Chris contends on appeal that the district court's dismissal of Magness violated his Sixth Amendment right to a trial by a jury of his peers, and that he therefore is entitled to a new trial. In essence, defendant claims that his petit jury was not drawn from a fair cross section of the community. We review such claims de novo. See United States v. Hill, 197 F.3d 436, 445 (10th Cir. 1999).

The Sixth Amendment to the U.S. Constitution "requires that petit juries in criminal trials be drawn from a fair cross section of the community." Id. (internal quotation marks and citation omitted). This requirement does not guarantee a criminal defendant a jury "of any particular composition." Id. Instead, it guarantees only that the pool of names from which a jury is drawn "must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." Id. Chris has not presented any evidence to show that the pool of names from which his jury was drawn excluded a distinctive

group in the community. Furthermore, our independent review of the record has revealed no such evidence. Thus, we find Chris's Sixth Amendment claim meritless.

Citing United States v. Hueftle, 687 F.2d 1305, 1309 (10th Cir. 1982) and United States v. Hall, 536 F.3d 313, 326 & n.13 (10th Cir. 1976), Chris insists that a district court may not dismiss a venire member merely because she has heard about the defendant's case and lives in the same town as the defendant. We construe this argument to be a claim that Chris's ultimate petit jury was partial, and we also find it to be meritless. "[T]he trial judge is vested with a wide discretion for determining the competency of jurors and his judgment will not be interfered with except in the case of an abuse of discretion." United States v. Porth, 426 F.2d 519, 523 (10th Cir. 1970) (internal quotation marks and citation omitted). As the Hueftle court stated, "[i]n the final analysis the only question is whether [a defendant was] given a fair trial." Id. Chris has not demonstrated that the lower court's dismissal of Magness in any way resulted in an unfair trial, and we have found no such evidence in the record. We therefore hold that the trial court did not abuse its discretion when it excused Magness for cause.

### III.  Bobby McHenry

On appeal, Bobby challenges his sentence on two grounds.[2]

### A.

The United States Sentencing Guidelines Manual ("U.S.S.G.") provides for

an increase in a defendant's offense level based on the amount of loss caused by

the transportation of stolen property.  U.S.S.G. § 2B1.1(b) (1997).  Bobby's

presentence report (PSR) recommended that his offense level be increased by

eight points because the total loss for his offenses was more than $70,000 but less

than $120,000.  Bobby objected to the eight-level increase, but the district court

overruled his objection.  The court concluded that "the evidence in the record is

adequate to support the ultimate conclusion of guilt found by the jury in reference

to Counts one, two and three [of the indictment]."  Sentencing Tr. at 5.

On appeal, Bobby argues that we should vacate his sentence and remand his

case for resentencing because the district court did not make specific findings

with regard to his objections.  Fed. R. Crim. P. 32(c)(1) provides that for "each

matter controverted [at a sentencing hearing], the court must make either a

finding on the allegation or a determination that no finding is necessary because

the controverted matter will not be taken into account in, or will not affect,

_____

[2]Bobby also argues that the district court improperly admitted evidence of uncharged acts against him.  Because Chris makes the same argument, we address their claims together in part IV.

sentencing."

Bobby failed to make a Rule 32(c)(1) objection below. Indeed, after the sentencing judge had ruled on all of Bobby's objections, he gave defense counsel an opportunity to "fill in the agenda" if there was anything else the court needed to address. Sentencing Tr. at 10. Defense counsel replied: "The Court has ruled on my entire agenda . . . ." Id. A defendant's failure to raise a Rule 32(c)(1) objection below limits us to reviewing for plain, or "obvious and substantial" error. See United States v. Brown, 164 F.3d 518, 522 (10th Cir. 1998). However, we have previously held that "the failure to make specific findings under Rule 32(c)(1) does not rise to the level of obvious and substantial error." Id. Thus, we need not proceed further on this issue.

**B.**

Bobby also objects to the district court's enhancement of his sentence based on his role as an organizer or leader of the conspiracy pursuant to U.S.S.G. § 3B1.1(a). [3] We review the district court's imposition of a § 3B1.1(a) enhancement for clear error. United States v. Spears, 197 F.3d 465, 468 (10th Cir. 1999). "The government must prove by a preponderance of the evidence facts establishing that a defendant was an organizer or leader for purposes of the

---

[3]Section 3B1.1(a) provides for a four level enhancement if a "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

- 9 -

sentencing enhancement." Id. at 468-69. Bobby contends that the government did not meet its burden. We disagree.

Before a sentencing court can impose a § 3B1.1(a) enhancement, it must find "first, that defendant is an organizer or leader; and, second, that the criminal activity involved five or more participants or was otherwise extensive." United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995) (internal quotation marks and citation omitted). The government must prove only that "five persons participated in the criminal venture, and that Defendant exercised leadership control over at least one person." United States v. Cruz Camacho, 137 F.3d 1220, 1224 (10th Cir. 1998). "[T]he gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals." Torres, 53 F.3d at 1142. The enhancement is for organizers or leaders of criminal activity, not for important or essential figures. Id.

We consider many factors in determining whether a defendant exercised a leadership and organizational role, including

> the exercise of decision making authority, the nature
> of participation in the commission of the offense, the
> recruitment of accomplices, the claimed right to a larger
> share of the fruits of the crime, the degree of participation
> in planning or organizing the offense, the nature and scope
> of the illegal activity, and the degree of control and authority
> exercised over others.

U.S.S.G. § 3B1.1(a) commentary n.4. Even if a defendant did not organize, lead,

manage or supervise other participants, the enhancement may apply if the defendant "nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." Id. commentary n.2.

The record in this case supports the district court's finding that Bobby was an organizer and a leader of criminal activity. Bobby instructed Gene Sloan to steal certain kinds of property and, on at least one occasion, indicated that he preferred Sloan to steal an item outside of Tulsa, Oklahoma. Bobby also directed Sloan to specific locations so that Sloan could steal property that Bobby wanted. At one point, Bobby asked Sloan to steal a piece of property and then left for vacation. Chris refused to pay Sloan for the property until he received authorization from Bobby or another person. Thus, the evidence presented at trial demonstrates that Bobby was a primary decision maker and that he exercised a great deal of leadership control over Sloan. Furthermore, the evidence indicates that Bobby enjoyed a larger share of the fruits of the conspiracy. He paid Sloan much less for the stolen items than they were worth, and then used many of the items in his business or traded them for property of comparable value.

The record in this case also clearly supports the district court's finding that at least five people participated in the conspiracy: Bobby, Chris, Sloan, Jesse Doss and Dickie Spears. Accordingly, we conclude that the government met its burden of proof, and thus that the district court did not clearly err when it

enhanced Bobby's sentence pursuant to U.S.S.G. § 3B1.1(a).

Bobby contends, in the alternative, that we should remand his case for resentencing because the district court failed to make specific findings of fact with respect to his role in the offense. This is tantamount to a claim that the district court violated Rule 32(c)(1). Bobby did not make this objection below. Therefore, we may review the district court's findings only for plain error. As we held above, a court's failure to comply with Rule 32(c)(1) does not constitute plain error. See Brown, 164 F.3d at 522. Thus, we need not proceed further on this issue.

### IV. Uncharged Acts Evidence

Both Chris and Bobby claim that the district court erred when it admitted evidence of eight uncharged acts against them pursuant to Fed. R. Evid. 404(b). The Rule 404(b) evidence showed that defendants' co-conspirators stole property in Oklahoma and then sold it to either Chris or Bobby. Six of the uncharged acts occurred between July 1994 and November 1994, one happened in January 1995, and one took place in April 1996. The Second Superseding Indictment alleged that the conspiracy began in or about January 1995 and continued until in or about November 1996. Thus, six of the uncharged acts occurred shortly before the alleged conspiracy began. In addition, the uncharged acts involved property stolen in Oklahoma and sold to defendants in Oklahoma, while the charged crimes

involved the transportation of stolen goods in interstate commerce.

Prior to trial, the government filed a notice of its intent to present evidence of the uncharged acts. The government stated that the evidence would be offered to show the intent, opportunity, plan, knowledge, and identities of the conspirators. The court allowed evidence of uncharged crimes that occurred in 1994 or later, but did not permit evidence of uncharged acts that occurred before 1994 or on dates unknown.

The prosecution introduced the uncharged acts evidence at the beginning of the trial. After several witnesses had testified, the district court gave the jury a limiting instruction. The court instructed the jury that if it ultimately found beyond a reasonable doubt that the prosecution had proved the charged thefts underlying the conspiracy, then it could consider the uncharged acts only for the limited purpose of determining whether there was "a scheme, or a plan or knowledge or the state of mind or the intent on the part of the defendants." Trial Tr. at 327. The court repeated the instruction at the close of the government's case and in its final instructions. The trial court also ruled that, under Fed. R. Evid. 403, the probative value of the uncharged acts evidence outweighed its prejudicial effect.

We review the district court's admission of Rule 404(b) evidence for an abuse of discretion. United States v. Hill, 60 F.3d 672, 676 (10th Cir. 1995).

- 13 -

Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity . . . ."  Admission of Rule 404(b) evidence is proper if:

> (1) the evidence was offered for a proper purpose; (2) the evidence was relevant; (3) the trial court determined under Fed. R. Evid. 403 that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court gave the jury proper limiting instructions upon request.

Hill, 60 F.3d at 676 (citing  Huddleston v. United States  , 485 U.S. 681, 691-92 (1988)).

In this case, the government clearly offered the uncharged acts evidence for a permissible purpose: to show that defendants' knew their co-conspirators, intended that their accomplices would steal certain types of property, planned to purchase the stolen property, and had the opportunity to do so.  Second, the uncharged crimes were relevant because they were close in time and similar in method to the charged conspiracy.    See United States v. Record  , 873 F.2d 1363, 1375 (10th Cir. 1989) (recognizing, in the narcotics context, the relevance of uncharged misconduct that is close in time and similar in method to the charged scheme).

Third, as the district court ruled, the probative value of the uncharged acts

evidence outweighed its prejudicial effect.  The evidence was highly probative of the charged conspiracy, and the district court followed the evidence with a limiting instruction.  Furthermore, the court repeated its limiting instruction at the close of the government's case and in its final instructions.  We therefore hold that the district court did not abuse its discretion in admitting the Rule 404(b) evidence.

Defendants contend that the Rule 404(b) evidence was inadmissible because neither the government nor the district court precisely articulated the purpose of the proffered evidence.  See United States v. Birch, 39 F.3d 1089, 1093 (10th Cir. 1994) (stating that both the government and the trial court must specifically identify the purpose of the uncharged acts evidence).  Even if the government and the district court fail to articulate the evidentiary purpose of uncharged acts, "404(b) evidence is nevertheless admissible if the decision to admit fulfills the requirements set out by the Supreme Court in Huddleston." Id. at 1093-94.  We find that the Huddleston requirements were met.

AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge


- 15 -