**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JASON RYAN EATON,

Defendant-Appellant.

No. 99-5010

(D.C. No. 98-CR-86-K)

(N.D. Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.[1]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]Defendant Eaton's notice of appeal was filed more than ten but less than forty days after entry of judgment. The matter was partially remanded to the district court for a determination of excusable neglect under Fed. R. App. P.

(continued...)

Jason Ryan Eaton appeals the denial of his motion to withdraw his guilty plea to violating the Hobbs Act, 18 U.S.C. § 1951, by unlawfully attempting, and threatening by violence in furtherance of a plan, to take and obtain items from the presence of an employee at the Citgo Quikmart, 1802 S. Sheridan Road, Tulsa, Oklahoma; and to two counts of carrying and using a firearm, in violation of 18 U.S.C. § 924 (c). His principal argument, variously stated, is that the federal court lacked jurisdiction because he was neither lawfully charged with a federal crime nor admitted to any conduct which obstructed, delayed or affected commerce, which is an essential and jurisdictional element of a Hobbs Act violation. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## BACKGROUND

On June 5, 1998, Mr. Eaton was indicted on three counts of violating the Hobbs Act, 18 U.S.C. § 1951, and three firearms counts, 18 U.S.C. § 924(c), in connection with three armed robberies. Count One charged Eaton with unlawfully obstructing, delaying or affecting commerce by robbing a Texaco station on March 11, 1998, and Count Two charged the use of a firearm in that

---

[1](...continued)
4(b)(4). See United States v. Lucas, 597 F.2d 243, 245 (10th Cir. 1979). On remand, the district court determined there was excusable neglect, and granted defendant's motion to extend time to appeal. Accordingly, this court has appellate jurisdiction. See 28 U.S.C. § 1291.

robbery.  Count Three charged Eaton with unlawfully obstructing, delaying or affecting commerce by robbing the Citgo at 10822 East 41st Street, Tulsa, Oklahoma, on April 19, 1998, and Count Four charged the use of a firearm in that robbery.  Count Five charged Eaton with obstructing, delaying or affecting commerce by robbing and attempting to take and obtain items from the presence of an employee of Citgo Quikmart, 8102 S. Sheridan Road, Tulsa, Oklahoma, by means of actual and threatened force and violence on April 19, 1998, and Count Six charged the use of a firearm in that robbery.

On August 24, 1998, the day set for trial, Mr. Eaton entered a plea of guilty to Counts Two, Four and Five.  The plea was supported by an extensive written plea agreement, in which Eaton admitted the elements of Counts Two, Four and Five as charged; and the government agreed, at the appropriate time, to dismiss Counts One, Three, and Six.  The district court conducted an extensive, careful and complete Fed. R. Crim. P. 11 hearing, covering 33 pages of transcript.

As to the factual basis for the plea on Count Five, Mr. Eaton testified under oath as follows:

> DEFENDANT:     The third robbery was committed later that night around 11:00 o'clock, I believe.  Justin James came over to the apartment and which we were on the way to his house, not deliberately going to the Citgo and the Citgo happened to be on the way to his house.  And we were planning on going to do some type of crime, but we had not planned on doing that Citgo.

THE COURT:     Who was with you?

DEFENDANT:     Justin Lee James, the codefendant.

THE COURT:     Okay.  A friend of yours?

DEFENDANT:     Yes, Your Honor.

THE COURT:     All right.

DEFENDANT:     We came to a stoplight where the Citgo was by his house on the way to his house and he said, "Why don't we do that Citgo?"

So we pulled around to the back parking lot and we parked the truck, got out and walked up to the back gate or the back fence and then stood there for a little while and watched what was going on at the store.  And we saw the man enter the store, then leave again –

THE COURT:     What do you mean the man?

THE WITNESS:     – in the cooler.

THE COURT:     Who are you talking about when you say you saw the man enter the store?

DEFENDANT:     The employee.

THE COURT:     Okay.

DEFENDANT:     Saw the employee exit the store and walk into the cooler where he was stocking the beer.  Justin Lee James walked up to the store and looked around inside the store and he came back and said that there was nothing, that there was no one in it and none of the doors were locked.

Then we walked up to the store and we stood outside the cooler and I had a bad feeling about it.  So we walked back to the other side of the fence and we stood there for a little while longer.

-4-

And at this time I was, in a way, being provoked to carry it on and so we agreed to walk up to the store even if –

THE COURT:     Your accomplice was egging you on?

DEFENDANT:     Yes, Your Honor.

THE COURT:     Okay.

DEFENDANT:     We walked back up to the store and we walked into the cooler and I pointed the gun at the employee and –

THE COURT:     The same weapon?

THE WITNESS:     Different weapon, Your Honor.

THE COURT:     What kind of weapon is this?

DEFENDANT:     It was a .32.

THE COURT:     Where did you get a hold of that weapon?

DEFENDANT:     From Dan Snellgrove.

THE COURT:     Spell that.

DEFENDANT:     S-N-E-L-L-G-R-O-V-E.

THE COURT:     Who is he?

DEFENDANT:     He was the brother of a friend of mine.

THE COURT:     Did you trade him or did you buy the weapon?  How did you –

DEFENDANT:     Borrowed it.

THE COURT:     Borrowed it?

DEFENDANT:     (Nods head up and down.)

-5-

THE COURT: Okay.

DEFENDANT: We walked into the cooler. I asked the employee to freeze, which he did, asking me what did I want. I told him I wanted the keys to the store. Then Justin Lee James told him to give me the wallet and he took the wallet out and set it on the – set it on the shelf.

And then I asked him if the alarm was on and he said no. And I asked hm if there was any certain code you have to push to open the registers. He said, "One, two, three, enter."

And I asked him if there was money in the register and he said, "Yes."

I reached to grab the wallet and he lunged at me, grabbing the gun and forcing it upward and then I was turning around. And Justin Lee James, during the struggle, hit the man in the head several times with the gun, with the butt of the gun in the head, causing him to bleed.

During the struggle, he knocked my hat and sunglasses off, which after the man let me go, I picked up the sunglasses and the hat and turned around and pulled the trigger and fired one shot at him wounding him in the stomach.

Then the man started running off and I started running the opposite way back towards the car. And I turned around and looked at him one more time and pointed the gun at him, and then I ran away, got in the car and drove off.

THE COURT: You shot at it but did not hit him?

DEFENDANT: No, Your Honor, I wounded the man.

THE COURT: So you did wound him?

DEFENDANT: Yes, Your Honor.

THE COURT: And then did you get away with anything from this robbery attempt?

DEFENDANT: The man's wallet.

THE COURT: The man's wallet. How much was in the wallet?

DEFENDANT: $16.00.

Tr. of Aug. 24, 1998, Hr'g at 23-27.

At the conclusion of the plea hearing, the court found that Eaton had admitted the elements of the crimes charged, that there was a factual basis for the pleas of guilty, and that Eaton's pleas were knowingly, intelligently and voluntarily entered. The court then accepted the pleas and found Eaton guilty as charged.

Subsequently, Mr. Eaton obtained new counsel, and on December 4, 1998, moved to withdraw his guilty pleas. That motion was heard by the district court on December 7, 1998, the date previously set for sentencing.

At the hearing, counsel for Mr. Eaton raised one central legal argument challenging the jurisdiction of the court on the basis of United States v. Lopez, 514 U.S. 549 (1995). He stated: "Until I was approached to become involved in this case, Your Honor, I was not aware that armed robbery had become a federal crime, and I have grave concerns about the ability of the act of congress that

makes this a federal offense to withstand a jurisdictional challenge." Tr. of Dec. 7, 1998, Hr'g at 2-3.

The district court rejected this argument, denied Eaton's motion to withdraw his guilty plea, and sentenced him to 39 years in prison, calculated as follows: 168 months on Count Five, 60 months on Count Two, and 240 months as to Count Four, all to run consecutively. In addition, the court ordered restitution in the amount of $56,313.46, and three years' supervised release.

On appeal, Mr. Eaton primarily presents several versions of his argument about jurisdiction, in essence, as follows: The Hobbs Act is unconstitutional as applied to robberies intra-state; the indictment's language was insufficient to involve federal jurisdiction; and, if the district court initially had jurisdiction, that jurisdiction was lost because no factual basis was developed showing that Eaton's conduct delayed, obstructed or affected commerce, thus omitting an essential element of the crime. As Eaton's brief on appeal summarizes it:

> The fundamental issue in this appeal comes down to jurisdiction. How far can the Government go to prosecute an individual for what has been, historically, a State crime and a State crime only? On the other side of the coin, Jason Eaton is asking this Court to question the amount of evidence that needs to be presented to the trial court before the court can be said to be vested with subject matter jurisdiction. In this case, the evidence was insufficient to establish the necessary connection with interstate commerce. Therefore, the trial court lacked jurisdiction to find Appellant guilty and to sentence him.

Appellant's Br. at 25.

-8-

## DISCUSSION

We review for abuse of discretion a district court's denial of a motion to withdraw a guilty plea. United States v. Carr, 80 F.3d 413, 419 (10th Cir. 1996). However, we review questions of law, including jurisdiction, de novo. See United States v. Cuch, 79 F.3d 987, 990 (10th Cir. 1996).

### A.

Mr. Eaton's brief on appeal does not cite a single case directly on point in support of his arguments regarding jurisdiction and the lawfulness of the Hobbs Act charge here or the adequacy of his plea to that charge. On the other hand, he tacitly and correctly acknowledges that there is controlling law to the contrary. Appellant's Br. at 23.

The Hobbs Act, 18 U.S.C. § 1951(a), provides as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

That Act, among other things, constitutionally conferred federal jurisdiction over persons committing in-state robberies or attempts, or threats of or actual physical violence to any person, when that conduct in any way or degree

obstructs, delays or affects commerce or the movement of any article or commodity in commerce, or is in furtherance of a plan or purpose to do so. United States v. Wiseman, 172 F.3d 1196, 1214 (10th Cir.), cert. denied, 120 S. Ct. 211 (1999); United States v. Romero, 122 F.3d 1334, 1340 (10th Cir. 1997); United States v. Bruce, 78 F.3d 1506, 1509 (10th Cir. 1996); United States v. Bolton, 68 F.3d 396, 398-99 (10th Cir. 1995).

It follows that Count Five of the indictment in this case, which recited and related these elements and jurisdictional facts relating to the April 19, 1998, robbery, attempt, and violence and threats of violence by Eaton at the Citgo Quikmart, established jurisdiction in the district court. See United States v. Brown, 164 F.3d 518, 521 (10th Cir. 1998). All else became a matter of proof by the government at trial, or plea of guilty by the defendant.

In numerous cases we have described the level and type proof (including factual admissions by a plea of guilty) necessary to establish the elements described above. The Act covers any act, attempt, conspiracy, violence, or threat of violence, which in any way or degree obstructs, delays or affects commerce, or is in furtherance of a plan to do so. Accordingly, we have held that only a minimal effect on commerce must be shown. See United States v. Malone, No. 99-5201, 2000 WL 1199084, at *19-20 (10th Cir. Aug. 23, 2000); United States v. Nguyen, 155 F.3d 1219, 1224 (10th Cir. 1998), cert. denied 525 U.S. 1167

(1999).  We have also held that, in the circumstances of the particular case, it is sufficient to show only that the conduct in question potentially delayed, obstructed or affected commerce, or that it could (as opposed to would) do so, or that such effect is probable.  Id. at 1228; Wiseman, 172 F.3d at 1215-16.[2]

Under these standards, Eaton's recitation of the facts, set out above, amply established both an actual, and an attempted, affect on commerce to a meaningful degree, and the commission of violence and the threat of violence in furtherance of a purpose to do so.  He did not just rob a man of his wallet.  He went to a combination gas station/convenience store for the purpose of robbing it, and in furtherance of that plan began by threatening the attendant with a firearm.  He asked the attendant about alarms, codes and money in the till.  He then shot the attendant when he resisted, and, in the event, obviously shut down or interfered with the business for the time it was without an attendant and for the time necessary for a police investigation.  The circumstances prevented the purchase of fuel for vehicles—a commodity and service quintessentially involved in interstate commerce—and goods moving in interstate commerce; and affected the

---

[2]The recent decision by the Supreme Court in Jones v. United States, No. 99-5739, 2000 WL 645885 (U.S. May 22, 2000), does not require a different analysis under the facts before us.  The business in question was employed in interstate commerce, and the affect or potential affect on commerce here was more than de minimis.  The guilty plea removed any necessity for further quantification.  Malone, 2000 WL 1199084, at *19-20.

business of a corporation directly involved in interstate commerce. That obstruction, delay, and affect would probably continue for a period of time following April 19, 1998.

Furthermore, the fact that Eaton did not get to the cash register because the attendant resisted and got shot does not relieve him of the charge of attempted depletion of the business's assets (taking items from the presence of the attendant), which would affect commerce. 18 U.S.C. § 1951(a); Indictment, Count Five. See Wiseman, 172 F.3d at 1214-16 (discussing depletion of assets). Cf., United States v. Arena 180 F.3d 380, 394 2d Cir. 1999) (the fact that defendant is ultimately unsuccessful in stealing the cash in the register does not alter his liability under the Hobbs Act). Nor would failure to get to the register alter the criminal nature of Eaton's violence and threat of violence in furtherance of his plan to do so.

We have undertaken the foregoing review of Eaton's factual admissions due to his arguments: (1) that the district court allegedly failed to establish a factual basis for a necessary element of the crime (affect on interstate commerce) and therefore jurisdiction failed; and (2) his plea was not knowing and voluntary because he did not know that his acts and attempt allegedly did not and could not affect interstate commerce. As indicated above, both arguments are meritless.

There is, of course, a separate and more direct ground for rejecting Eaton's claims. By pleading guilty unconditionally, Eaton admitted all material facts charged in the indictment, see United States v. Broce, 488 U.S. 563, 569 (1989), including all factual predicates to jurisdiction, see Brown, 164 F.3d at 521. Therefore, Eaton's unconditional guilty plea "established facts sufficient by operation of law to maintain subject matter jurisdiction through the entry of judgment." Id. at 522.

**B.**

Mr. Eaton's counsel also argued to the district court that Eaton's waiver of his right to appeal or mount a collateral attack, as part of the plea agreement, was unlawful. It is not clear from the record, or on appeal, whether (1) this claim was made simply to permit the kind of jurisdictional appeal discussed above; or (2) it is supposed to be a free-standing argument for wholly invalidating the plea agreement and supporting withdrawal of the plea; or (3) it is intended to preserve the right to appeal or pursue collateral proceedings on any ground despite the guilty plea.

If the first reason listed above is the purpose of the claim, then the argument is moot since we have dealt with the merits of the jurisdictional appeal in our discussion above. And, we reject the other possibilities. Absent

-13-

exceptions not applicable here, we and other courts have upheld a knowing and voluntary waiver of the right to appeal. See United States v. Black, 201 F.3d 1296, 1300-03 (10th Cir. 2000); United States v. Atterberry, 144 F.3d 1299, 1300 (10th Cir. 1998); United States v. Hernandez, 134 F.3d 1435, 1437 (10th Cir. 1998); United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994); United States v. Michlin, 34 F.3d 896, 898 (9th Cir. 1994).

Finally, Eaton argues that his plea agreement should fail for lack of consideration since, at his age, 19, a 39-year sentence is not qualitatively different from the sentence, up to life, which he could have received upon a finding of guilty on all six counts of the indictment. He cites no cases on point. Since the issue was not raised below, we would review it only for plain error and reject it on the merits. Cf. Hernandez, 134 F.3d at 1437. However, since, as indicated herein, we conclude that Mr. Eaton's plea agreement was lawful, the terms of the waiver in that agreement preclude him from appealing his sentence. See Black, 201 F.3d at 1300-03.

## C.

In summary, the federal rules provide that a motion to withdraw a guilty plea may be granted for any "fair and just reason" Fed. R. Crim. P. 32 (e). The

defendant bears the burden of persuasion.  See United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993), cert. denied, 510 U.S. 1184 (1994).

At the hearing in the district court on Mr. Eaton's motion to withdraw his plea, his counsel stated several times that his only reasons were the legal arguments which we have described and addressed above.  Tr. of Dec. 7, 1998, Hr'g at 2, 3, 5.  Beyond that, counsel represented to the court that "[t]he terms of the plea agreement and the specifics are not objectionable to the defendant in any way . . . ."  Id. at 2.

Since, as indicated above, there is no merit to the legal challenges raised by Eaton's counsel, it follows that the district court did not err in denying Mr. Eaton's motion to withdraw his guilty plea.  It is unnecessary for us to further review the factors set out in Gordon at 1572.  Furthermore, we have thoroughly reviewed Mr. Eaton's plea agreement and the hearing at which he entered his plea of guilty, as well as other material in the record, and conclude that his pleas of guilty were both knowing and voluntary.  See United States v. Libretti, 38 F.3d 523, 529 (10th Cir. 1994), cert. denied, 514 U.S. 1035 (1995) (we review de novo whether a plea was knowing and voluntary).

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's denial of Mr. Eaton's motion to withdraw his guilty plea, and DISMISS the appeal of his sentence.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge