**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GILBERT MEDINA,

Defendant-Appellant.

No. 99-1460
(D.C. No. 99-CR-112-D)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **McKAY**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Gilbert Medina pleaded guilty to an information charging him with theft of government property and aiding and abetting in violation of 18 U.S.C. §§ 641 and 2. He was sentenced to three years probation, including six months of home

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

detention, and ordered to pay $61,572 in restitution. Defendant challenges his sentence. We have jurisdiction under 28 U.S.C. § 1291.

Defendant Medina was a civil service general aviation technician for the Colorado Army National Guard (COARNG) at Buckley Air National Guard Base in Aurora, Colorado. In November 1998, Anthony Gutierrez, a civil service engine technician at Buckley, asked the defendant if he wanted to make some extra money working after hours at the base by assisting in the removal of main rotor blades from three Army-owned helicopters located on the base. Defendant Medina agreed. The defendant along with Carmela Rodriguez, a general mechanic/civilian technician at COARNG, removed a set of two blades each from three helicopters. The work was performed in a hangar at Buckley over a period of three days, working two to three hours each day after normal working hours.

On the third day, after the removal of the third and last set of blades, the defendant called Mr. Gutierrez and informed him the work was complete. Shortly thereafter, Gutierrez arrived at Buckley in a civilian truck. The defendant helped load three sets of rotor blades and two helicopter engines onto the truck. Gutierrez then drove the truck off the base to a farm in or near Watkins, Colorado. The defendant followed in another vehicle. At the farm, the defendant helped unload the rotor blades.

Mr. Gutierrez sold the three sets of rotor blades to SECO Aviation, an

2

aircraft parts supplier in Georgia, for $43,572, and one of the helicopter engines, identified as the third engine, for $18,000. He was offered $16,000 by SECO for the other engine, identified as the fourth engine. Approximately two weeks later, Defendant Medina was paid $4,000 by personal check from Gutierrez. Defendant cashed the check. The removal and sale of the blades and engines were not authorized by COARNG or the Army.

In April 1999, the parties entered into a plea agreement, which contained a sentencing computation the parties acknowledged was not binding on the district court. In this computation, the total offense level was calculated at seven with a criminal history category of I. The sentencing guideline for a violation of 18 U.S.C. § 641 is U.S.S.G. § 2B1.1, and the based offense level is four. Under § 2B1.1(b)(1)(H), the offense level was increased by seven because the "loss," which only included the three sets of rotor blades, was calculated at being more than $40,000 but less than $70,000. Under § 3B1.2(b), the defendant's offense level was decreased by two because of his minor participation in the criminal activity, and decreased by two under § 3E1.1(a) because of his acceptance of responsibility.

The presentence report (PSR) however contained a recommended total offense level of ten. The report included not only the three sets of rotor blades but also the two helicopter engines as part of relevant conduct in a jointly

3

undertaken criminal activity. *See* § 1B1.3(a)(1)(B). Thus, under § 2B1.1(b)(1)(I), the offense level was increased by eight because the "loss" was calculated at more than $70,000 -- $43, 572 for the rotor blades, $34, 000 for the engines -- but less than $120,000. The report also contained a recommendation that the defendant's offense level be increased by two under § 2B1.1(b)(4)(A) for more than minimal planning.

Defendant Medina objected to the inclusion of the engines in the loss calculation, arguing that his involvement with the engines was incidental. The government also objected to inclusion of the engines, arguing that it could not prove criminal intent as to theft of the engines by the defendant, and that it just didn't think the engines should be considered. Finally, the defendant objected to the two-level increase for more than minimal planning. After hearing testimony at the sentencing hearing on September 22, 1999, the district court adopted the factual findings and the guidelines application set forth in the PSR.

Defendant Medina argues that because the inclusion of the engines under relevant conduct increased his sentence, the district court erred in failing to use the clear and convincing evidence standard. Because the defendant did not raise this argument below, our review is limited to plain error. *See* Fed. R. Cr. P. 52(b); *United States v. Brown*, 164 F.3d 518, 522 (10th Cir. 1998). "To constitute plain error the district court's error must have been both 'obvious and

4

substantial.'" *United States v. Barber*, 39 F.3d 285, 288 (10th Cir. 1994). This court has held that the preponderance standard applies to fact finding in the sentencing process. "At least as concerns making guideline calculations, the issue of a higher than a preponderance standard is foreclosed in this circuit." *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993). Defendant's argument fails.

The defendant next argues that the district court's "disregard" for the parties' stipulation of facts in the 1998 plea agreement "offends" the public policy behind the December 1999 amendments to Fed. R. Cr. P. 11(e)(1)(B). *See* Aplt. Brief at 13-14. The defendant appears to suggest that the district court should have limited its relevant conduct determination to only those facts set forth in the plea agreement's stipulation. Because he did not object below, our review is for plain error. *See Brown*, 164 F.3d at 522. In a Rule 11(e)(1)(B) agreement, the government makes a sentencing recommendation, or agrees not to oppose a defendant's request for a particular sentence, with the understanding that such recommendation or request shall not bind the district court. *See United States v. Siedlik*, 231 F.3d 744, 748 (10th Cir. 2000). In this case, the plea agreement only computed the sections of the guidelines that the parties anticipated being applicable. Further, even if the plea agreement were construed as falling within Rule 11(e)(1)(B), the parties acknowledged in the agreement that the district court

5

was not bound by the plea agreement's stipulation of facts or sentencing computation. *See* Vol. 1, Doc. 8 at 3 and 5. This argument fails.

The defendant also argues that the district court erred in imposing a eight level enhancement to his sentence under § 2B1.1(b)(1). The guidelines provide for such an enhancement when the value of the property taken or "loss" is more than $70,000 but less than $120,000. *See* § 2B1.1(b)(1)(I). The defendant challenges this enhancement on three grounds.

He first claims that rather than make its own findings and decisions, the district court merely relied on the PSR's findings and recommendations. *See* Vol. 4, PSR. Because the defendant failed to raise this issue below, our review is limited to plain error  This argument lacks merits. The record clearly demonstrates that the district court did its own analysis of the facts in open court after hearing testimony and arguments by counsel during the sentencing hearing.

The defendant next claims that the district court erred in including the helicopter engines as relevant conduct, particularly over the objections of the defendant and the government. He argues that the government, not the court, bears the burden of proof for a sentencing increase.

"We review questions of law regarding application of the Sentencing Guidelines de novo [and] . . . findings of fact under the clearly erroneous standard." *United States v. Wiseman*, 172 F.3d 1196, 1217-18 (10th Cir.), *cert.*

6

*denied*, 528 U.S. 889 (1999). This court "will not disturb a sentencing court's factual findings unless they are 'without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made.' " *United States v. Moore*, 130 F.3d 1414, 1416 (10th Cir. 1997).

In the plea agreement, Defendant Medina agreed to be sentenced according to the Sentencing Guidelines, and agreed that the guidelines would be computed by taking into account all relevant conduct. *See* Vol. 1, Doc. 8 at 2. Further, the defendant acknowledged in the agreement that the district court was not bound by the stipulation of facts, and that the court, with the aid of the presentence report, may determine the facts relevant to sentencing. *Id.* at 3.

Under the guidelines, a district court at sentencing must consider all relevant conduct. *See* § 1B1.3. The scope of relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction." *See* § 1B1.3(a)(1)(B); *United States v. Melton*, 131 F.3d 1400, 1403 (10th Cir. 1997). A defendant may be held responsible for the conduct of co-conspirators, whether or not the crime was charged as a conspiracy. *See* *Washington*, 11 F.3d at 1516. Thus, in calculating Defendant Medina's offense level, the district court was not limited to the rotor blades but could sentence him

7

based on the engines.

The defendant did not testify during sentencing. Through counsel he asserted that he knew nothing about the engines until the third night. While acknowledging that the defendant assisted in loading the engines onto the civilian truck of Anthony Gutierrez, counsel argued that the defendant's involvement was incidental, and that the theft of the engines was conceived and executed by Gutierrez.[1]

During the sentencing hearing, senior probation officer Anthony Merlo, who prepared the PSR, testified under oath, *see* Vol. 3, Sentencing Tr. at 7, to his guidelines' determinations and calculations. The officer stated that when the defendant helped load the rotor blades onto the civilian truck, he also assisted Gutierrez in loading two helicopter engines, *id.* at 9, and that the defendant's relevant conduct should include the two engines, *id.* at 10-11. The probation officer was cross-examined by counsel for the defendant and the government, and questioned by the court. During cross-examination by counsel for the defendant, the officer stated that the defendant had earlier testified in court that "on the evening that the blades were being loaded onto the truck, he was aware they were stealing equipment from the base." *Id.* at 14-15; *see also* Vol. 2, Plea Tr. at 10,

---

[1] In a separate criminal action, Mr. Gutierrez pleaded guilty to two counts of theft of government property in violation of 18 U.S.C. § 641.

8

14, and 31. The court subsequently heard arguments from counsel. At the

conclusion of this process, the court held:

> But in looking at the facts here, here's what the Court believes happened. Mr. Gutierrez was involved in this scheme to steal helicopters and engines from the Army and then to sell those to a third party, in this case SECO. He enlisted the assistance of Mr. Medina to dismantle the helicopter blades; that is, to take the helicopter blades apart so that they could then be moved and transported. And it took Mr. Medina three nights to do that. And he did this after hours. And he knew or should have know that this was criminal activity. And in fact, he did know it. He says by the third night in his change of plea hearing, so in any event he's pled guilty to, so he knew it was illegal.
>
> Then we deal with the engine. On the third night, at a time that Mr. Medina knew what he was doing was unlawful, he then helped load the engine, engines, third and fourth engines, onto the truck. And I think it's all part of the same activity. And for the Court not to treat that as relevant conduct would be incompatible and inconsistent with the requirements of section 1B1.2 of the guidelines and section 1B1.3 of the  the guidelines. So I'm going to reject the objections or overrule the objection, and I will adopt the guideline calculations set forth by the probation department because I believe that they're well-founded and consistent with proper interpretation of the guidelines.

Vol. 3, Sentencing Tr. at 32-33. Based on the evidence, the district court did not

err in considering the engines as part of relevant conduct under § 1B1.3, and thus

including them in the loss computation for purposes of § 2B1.1(b)(1).

The defendant also claims that the district court erred in including the value

of the fourth engine in its loss computation under § 2B1.1(b)(1). The court

calculated "loss" at $43,572 for the three sets of rotor blades, $18,000 for the

third engine, and $16,000 for the fourth engine. The defendant argues that §

9

2B1.1, comment. (n.2), cross-references to § 2X1.1 in the case of a partially completed offense, and that under § 2X1.1, the "loss" only would be $63,572 because the "victim [SECO] never paid the $16,000 for the fourth engine." Aplt. Brief at 21. Because this argument was not raised below, our review is limited to plain error. "Loss" is the fair market value of the "property taken." § 2B1.1, comment. (n.2). The fourth engine was taken without authority from Buckley with the assistance of the defendant. Thus, the court did not err in including the value of the fourth engine in the § 2B1.1(b)(1) computation.

The defendant's final argument is that the district court erred in imposing a two-level enhancement under § 2B1.1(b)(4)(A). "More than minimal planning" exists in any case involving "repeated acts over a period of time, unless it is clear that each instance was purely opportune." *See* § 1B1.1, comment. (n.1(f)); *United States v. Copus*, 110 F.3d 1529, 1537 (10th Cir. 1997). The district court found that the enhancement applied because the defendant engaged in criminal activity over three "successive" nights, thus it was "more than just an incidental, opportune activity." Vol. 3, Sentencing Tr. at 33. The district court did not err.

The plain language of the guidelines supports the district court's view that three occasions is enough. *See United States v. Bridges*, 50 F.3d 789, 792 (10th Cir. 1994).

      AFFIRMED.

                                        Entered for the Court

                                        Monroe G. McKay
                                        Circuit Judge