EDWARD THOMAS WILSON, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 50057

October 27, 2011                                    267 P.3d 58

---

[Rehearing denied February 24, 2012]

*Boies, Schiller & Flexner, LLP*, and *Douglass A. Mitchell*, Las Vegas; *Glynn B. Cartledge*, Reno, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Gary H. Hatlestad*, Chief Deputy District Attorney, Washoe County, for Respondent.

Before the Court EN BANC.[1]

## OPINION

By the Court, HARDESTY, J.:

Appellant Edward Thomas Wilson pleaded guilty to first-degree murder and related felonies in the killing of an undercover Reno police officer in 1979. A three-judge panel sentenced Wilson to death for the murder. In this appeal from the denial of Wilson's third state habeas petition, we address whether our decision in *McConnell v. State* (*McConnell I*), 120 Nev. 1043, 102 P.3d 606 (2004), invalidates two of the aggravating circumstances used to make Wilson eligible for the death penalty. In particular, we consider whether *McConnell I* precludes the State from relying on the same predicate felony to support felony murder and felony aggravating circumstances when the defendant has pleaded guilty to first-degree murder based on both premeditated and deliberate murder and felony murder. We conclude that *McConnell I* does not preclude the State from using the same predicate felony in those circumstances. Because we conclude that this and Wilson's remaining claims do not warrant relief, we affirm the district court's order.

### *FACTS*

#### *The crime and the trial*

In the afternoon of June 24, 1979, Reno Police Officer James Hoff met with Wilson while posing as a narcotics dealer. Hoff and Wilson discussed a drug transaction in which Wilson agreed to sell Hoff ten ounces of cocaine for $1,600. During the meeting, Wil-

---

[1]THE HONORABLE KRISTINA PICKERING, Justice, did not participate in the decision in this matter.

son and Hoff agreed to complete the transaction around midnight that night.

Unbeknownst to Hoff, Wilson and John Olausen had been plotting to make a drug deal and kill the dealer. After Wilson met with Hoff, he and Olausen enlisted the help of David Lani and Fred Stites in executing the plan, and the four men discussed how and where to kill the drug dealer. The group settled on a location near a convalescent center in Reno. Once at the convalescent center, the four men cut and gathered bushes to conceal themselves. Wilson left the area to contact Hoff while the other three remained hidden in the bushes, each armed with a knife.

Meanwhile, Hoff was making his own preparations for the meeting with Wilson. He obtained $1,600 in $100 bills which were photocopied and their serial numbers recorded. He and another officer installed a listening device on Hoff's vehicle. Numerous surveillance teams were dispatched throughout the area to observe the transaction.

Shortly after midnight on June 25, Hoff met Wilson at a motel in Reno. After the rendezvous, Hoff and Wilson drove around Reno until approximately 1:30 a.m., at which time Hoff parked the car in a wooded area near the convalescent center. Unfortunately, shortly after Hoff met Wilson, the listening device on Hoff's vehicle malfunctioned and visual contacts were lost on several occasions throughout the night.

As Hoff and Wilson got out of the car, Lani jumped out of the bushes and stabbed Hoff in the back. The others emerged from their hiding places and together stabbed Hoff repeatedly. About 15 minutes later, the vehicle left the wooded area at a high rate of speed and the surveillance teams lost contact with it near Verdi, Nevada. The vehicle was found much later, unoccupied and stained with blood. After that discovery, the police searched for Hoff and the suspects. They eventually found Wilson and Olausen later that afternoon, sleeping in some bushes alongside a trailer park. On the ground between them, police officers found a vest containing approximately $1,600. Fourteen of the sixteen $100 bills in the vest matched the prerecorded buy money. Wilson and Olausen were immediately placed under arrest. A few hours later, officers found Hoff's body buried under a pile of rocks in a drainage ditch in Verdi. Stites and Lani were arrested later in Oklahoma.

The State charged Wilson with first-degree murder, alleging that the killing was willful, deliberate, and premeditated and/or was committed in the perpetration or attempted perpetration of kidnapping and/or robbery. The State also charged Wilson with kidnapping and robbery, both with the use of a deadly weapon. Wilson pleaded guilty to all of the charges. A three-judge panel found three circumstances aggravated the murder—(1) the murder occurred during the commission of a robbery, (2) the murder oc-

curred during the commission of a kidnapping, and (3) the murder was committed for pecuniary gain. The sentencing panel found two mitigating circumstances—Wilson had no significant history of prior criminal activity, and he was 20 years old at the time of the murder. Concluding that the mitigating circumstances found did not outweigh the aggravating circumstances, the sentencing panel imposed a sentence of death. We affirmed the convictions and death sentence. *Wilson v. State*, 99 Nev. 362, 664 P.2d 328 (1983).

*Post-conviction proceedings*

Wilson filed two state post-conviction petitions, which were denied in the district court. This court upheld the district court decisions in both instances. *Wilson v. State*, 105 Nev. 110, 771 P.2d 583 (1989); *Wilson v. State*, Docket No. 29802 (Order Dismissing Appeal, April 9, 1998). On November 21, 2005, Wilson filed his third post-conviction petition, raising 29 claims for relief. The State sought to dismiss the petition on the ground that it was procedurally barred. The district court agreed, concluding that Wilson's claims were procedurally defaulted and that he failed to demonstrate good cause and prejudice. The district court further concluded that he did not make a colorable showing of actual innocence or a fundamental miscarriage of justice to avoid the procedural bars. This appeal followed.

## DISCUSSION

In this opinion, we focus on Wilson's challenge to the sentence based on our decision in *McConnell I* and take this opportunity to answer the corollary to a question left open after that decision: whether the use of a felony aggravator is precluded if the defendant pleads guilty to first-degree murder based on both a willful, deliberate, and premeditated killing and a killing committed during the perpetration of or attempted perpetration of the same felony. Before answering that question, we must address the procedural defaults that apply to Wilson's petition and resulted in the district court's dismissal of the petition.

Because Wilson filed his petition approximately 22 years after this court issued its remittitur on direct appeal from the judgment of conviction and he had previously sought post-conviction relief, the petition was untimely under NRS 34.726(1) and successive under NRS 34.810(2). Therefore, the petition was procedurally barred absent a demonstration of good cause and prejudice. NRS 34.726(1); NRS 34.810(3). *McConnell I* applies retroactively, *Bejarano v. State*, 122 Nev. 1066, 1074-79, 146 P.3d 265, 271-74

(2006), and Wilson raised his claim based on *McConnell I* within a reasonable time after it became available. *See Hathaway v. State*, 119 Nev. 248, 71 P.3d 503 (2003). We therefore conclude that Wilson demonstrated good cause to excuse his delay in raising this challenge to his death sentence and in raising it in this successive petition. That leaves the question of whether he has demonstrated prejudice. We conclude that he has not done so because the felony aggravating circumstances are not invalid under *McConnell I*.[2]

In *McConnell I*, we held that it is "impermissible under the United States and Nevada Constitutions to base an aggravating cir-

---

[2] We have considered Wilson's challenges to the procedural default of his other claims and conclude that they lack merit and the district court did not err in denying the petition as untimely and successive under NRS 34.726 and NRS 34.810. Although Wilson suggests that the procedural default statutes cannot be applied to his petition because this court applies them inconsistently and in its discretion, we disagree for the reasons expressed in *State v. District Court (Riker)*, 121 Nev. 225, 236, 112 P.3d 1070, 1077 (2005), and *Pellegrini v. State*, 117 Nev. 860, 886, 34 P.3d 519, 536 (2001). And to the extent that Wilson argues that his second post-conviction counsel's alleged ineffective assistance provided good cause to excuse his procedural default, we disagree because Wilson was not entitled to the effective assistance of that counsel. *See Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997) (stating that "petitioner who has counsel appointed by statutory mandate is entitled to effective assistance of that counsel").

We have also considered Wilson's claims that failure to consider his petition on the merits would result in a fundamental miscarriage of justice and therefore this court should overlook the procedural default. As to his guilty plea, Wilson has not demonstrated that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" even considering the evidence that trial counsel allegedly failed to uncover and the evidence allegedly withheld by the State. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotations omitted); *U.S. v. Torres*, 163 F.3d 909, 914 (5th Cir. 1999) (Dennis, J., concurring); *Trotter v. State*, 907 So. 2d 397, 401 (Miss. Ct. App. 2005). And as to the death penalty, even assuming that new mitigating evidence previously omitted due to ineffective assistance of trial counsel could provide a basis for an actual innocence claim, *see Sawyer v. Whitley*, 505 U.S. 333, 345-47 (1992), we are not convinced that Wilson demonstrated "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him death eligible," *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. Nor are we convinced that he demonstrated actual innocence based on his allegation that the sentencing panel did not find that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. *See McConnell v. State (McConnell III)*, 125 Nev. 243, 254, 212 P.3d 307, 314-15 (2009).

We decline, however, to consider Wilson's challenge to the validity of his guilty plea on various grounds related to our decision in *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000) (prospectively rejecting *Kazalyn* instruction on premeditation), because this claim was not raised below, *see State v. Powell*, 122 Nev. 751, 756, 138 P.3d 453, 456 (2006) (observing that claims not raised below are generally barred from consideration on appeal). As a separate and independent basis for denying relief, *Byford* does not apply to this case because the conviction was final in 1985, long before *Byford* changed the law, *see Nika v. State*, 124 Nev. 1272, 1287, 198 P.3d 839, 849-50 (2008).

cumstance in a capital prosecution on the felony upon which a felony murder is predicated." 120 Nev. 1043, 1069, 102 P.3d 606, 624 (2004). The genesis of *McConnell I*'s holding was rooted in concerns that Nevada's broad definition of felony murder with no specific intent requirement beyond the intent to commit the underlying felony is insufficient to narrow death eligibility and that although the felony aggravator in NRS 200.033(4) "is somewhat narrower than felony murder," it is insufficient to narrow death eligibility for felony murderers. *Id.* at 1065-69, 102 P.3d at 621-24.

Wilson first suggests that he pleaded guilty solely to felony murder and therefore the State could not use the same underlying felonies as aggravating circumstances consistent with *McConnell I.* The record does not bear that out. Wilson pleaded guilty to the charge of first-degree murder, which included allegations that the killing was willful, deliberate, and premeditated and that it was committed in the perpetration or attempted perpetration of a felony. Relative to willful, deliberate, and premeditated murder, the district court advised Wilson during the plea canvass that one of the elements of murder was premeditation and asked Wilson what premeditation meant, to which he responded, "We preplanned it." Wilson also acknowledged that premeditation included a specific intent to kill. Later, during the plea canvass, the prosecutor asked the district court to ensure that Wilson understood that he was pleading guilty to premeditated murder as well as felony murder. And defense counsel expressed to the district court that there was no objection to Wilson pleading guilty to premeditated murder. Considering the record as a whole, we conclude that Wilson pleaded guilty to premeditated and felony murder. This court reached the same conclusion on appeal from the judgment of conviction when we declined to reach the issue later addressed in *McConnell I*—whether a felony can be used as an aggravating circumstance where the defendant has been convicted of first-degree murder predicated on the felony-murder rule. *Wilson v. State*, 99 Nev. 362, 373 n.7, 664 P.2d 328, 335 n.7 (1983). We declined to reach that issue specifically because Wilson "pleaded guilty to first degree murder upon the theories of premeditation and deliberation, as well as robbery and kidnapping." *Id.* at 373, 664 P.2d at 335.

Alternatively, Wilson argues that *McConnell I* precludes the use of the felony as an aggravator even if he pleaded guilty to premeditated murder as well as felony murder. He primarily focuses on the following language in *McConnell I*: "where the State bases a first-degree murder conviction *in whole or part on* felony murder, to seek a death sentence the State will have to prove an aggravator other than one based on the felony murder's predicate felony." 120 Nev. at 1069, 102 P.3d at 624 (emphasis added).

When read in the full context of the opinion, the language highlighted by Wilson does not support his argument. Following the

highlighted language, the *McConnell I* opinion goes on to advise the State to use a special verdict form during the guilt phase when it charges alternative theories of first-degree murder that include felony murder and intends to seek a death sentence, allowing jurors "to indicate whether they find first-degree murder based on deliberation and premeditation, felony murder, or both." *Id.* We cautioned that absent "the return of such a form showing that the jury did not rely on felony murder to find first-degree murder, the State cannot use aggravators based on felonies which could support the felony murder." *Id.* Considering the context of the full discussion, the opinion reflects concern that any juror may have based the murder conviction on felony murder given that there is no requirement that the jury unanimously agree on the theory of liability, *see Schad v. Arizona*, 501 U.S. 624, 630-45 (1991) (plurality opinion); *id.* at 648-52 (Scalia, J., concurring); *Anderson v. State*, 121 Nev. 511, 515, 118 P.3d 184, 186 (2005). The language highlighted by Wilson contemplates the circumstance where a jury has voted unanimously on a conviction for first-degree murder but the verdict is silent as to the theory or theories the jurors relied on to convict. In that circumstance, some jurors may have relied on a felony-murder theory while others relied on the theory of willful, deliberate, and premeditated murder to reach a unanimous finding of first-degree murder—that is, a conviction based in part on felony murder. As we explained in denying rehearing of *McConnell I*, the opinion "makes clear that if one or more jurors decide to convict based only on a finding of felony murder, then prosecutors cannot use the underlying felony as an aggravator in the penalty phase." *McConnell v. State (McConnell II)*, 121 Nev. 25, 30, 107 P.3d 1287, 1290-91 (2005); *see also Bejarano v. State*, 122 Nev. 1066, 1080, 146 P.3d 265, 275 (2006) (explaining that "*McConnell* applies whenever it is possible that any juror could have relied on a theory of felony murder in finding the defendant guilty of first-degree murder"). But what the opinion "does not expressly address [is] whether use of a felony aggravator is precluded if the jurors find unanimously that a murder was deliberate and premeditated but also find that it was felony murder." *McConnell II*, 121 Nev. at 30, 107 P.3d at 1291.

This case presents a corollary to the question that *McConnell I* left open as to a special verdict showing that the jury unanimously found that a murder was deliberate and premeditated and was felony murder: is use of a felony aggravator precluded if a defendant pleads guilty to first-degree murder based upon the theories of premeditation and deliberation as well as felony murder? We answered that question in the negative in Wilson's appeal from the judgment of conviction, *Wilson*, 99 Nev. at 373-74, 664 P.2d at

335, and we see no reason to answer it differently based on our intervening decision in *McConnell I*. The concerns expressed in *McConnell I* about the insufficient narrowing of death eligibility for felony murderers are not present when a defendant has pleaded guilty to first-degree murder based on both premeditated and deliberate murder and felony murder—the premeditation and deliberation shows that the defendant thought about and intended to kill the victim, and the felony aggravators show that the murder is more aggravated and heinous than other murders, thus both narrowing the class of death eligible defendants. At least one other court that has recognized the same limitation that we did in *McConnell I* has indicated that it is permissible to use the felony as an aggravating circumstance in this situation. *See, e.g., State v. Goodman*, 257 S.E.2d 569, 584-85 (N.C. 1979) (explaining that prior decision allows use of felony aggravator only when defendant is convicted for first-degree murder upon theory of premeditation and deliberation and holding that felony aggravator was properly submitted to jury when defendant found guilty upon theory of premeditation and deliberation ''as well as by virtue of the felony murder rule''). We therefore hold that the use of a felony aggravator is not precluded where the defendant has pleaded guilty to first-degree murder based on premeditation and deliberation *and* felony murder.

Here, Wilson pleaded guilty to first-degree murder based on premeditated and deliberate murder and felony murder. As explained above, the plea was not limited to felony murder. His death eligibility therefore was permissibly based on the felony aggravating circumstances found by the sentencing panel. Accordingly, the district court did not err by dismissing this claim.[3]

## CONCLUSION

We hold that where a defendant pleads guilty to a charge of first-degree murder based on theories of premeditation and deliberation

---

[3]Wilson argues that the district court erred by dismissing his claim that he is actually innocent of the receiving-money aggravator, NRS 200.033(6), because that aggravator is based on the same underlying facts supporting the felony aggravator based on robbery. He recognizes that this court previously rejected the same challenge to this aggravator in his direct appeal from the judgment of conviction, *Wilson v. State*, 99 Nev. 362, 376-77, 664 P.2d 328, 337 (1983), but he urges this court to reconsider this determination in light of our subsequent decision in *Lane v. State*, 114 Nev. 299, 304, 956 P.2d 88, 91 (1998), that robbery and receiving-money aggravators are impermissibly duplicative when based on the same facts. *Lane* was decided approximately 16 years after Wilson's conviction was final. We have yet to decide whether that case recognized existing law or set forth a new rule, but we need not do so here. Even if the receiving-money aggravator is invalid, Wilson is not actually innocent of the death penalty because the felony aggravators based on robbery and kidnapping remain. Accordingly, the district court did not err by dismissing Wilson's challenge to his death sentence on this ground.

and felony murder, the State is not precluded from seeking the death penalty based on a felony aggravator using the felony murder's predicate felony. Such is the case here. Having considered Wilson's claims and concluded that he failed to overcome applicable procedural bars or demonstrate that he is actually innocent of the crimes or the death penalty, we conclude that the district court did not err by dismissing his post-conviction petition.[4] We therefore affirm the district court's order.

SAITTA, C.J., and DOUGLAS, CHERRY, GIBBONS, and PARRAGUIRRE, JJ., concur.

---

[4]Because Wilson failed to overcome the procedural default rules and did not demonstrate his actual innocence of the crimes or the death penalty, the district court did not err by dismissing the petition as procedurally barred, including the following claims: (1) the trial court violated Wilson's due process rights by refusing to conduct a hearing on his presentence motion to withdraw his guilty plea; (2) the guilty pleas to kidnapping and robbery were the product of ineffective assistance of counsel and a deficient plea canvass; (3) trial counsel had a conflict of interest; (4) the conviction is invalid due to prosecutorial vindictiveness; (5) the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), relating to five prosecution witnesses; (6) the admission of the codefendants' statements during the penalty hearing violated the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36 (2004); (7) appellate and post-conviction counsel were ineffective; (8) inadequate state funding denied Wilson his right to effective assistance of counsel; (9) this court inadequately reviewed the evidence supporting the aggravators on direct appeal from the judgment of conviction; (10) the sentence is disproportionate to those of his codefendants and was improperly imposed by a three-judge panel; (11) the trial judge was not impartial; and (12) the death penalty constitutes cruel and unusual punishment. We note that Wilson raised most of these claims in his second state post-conviction petition.