# 133 Nev., Advance Opinion 7

## IN THE SUPREME COURT OF THE STATE OF NEVADA

JAVIER RIGHETTI,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
MICHELLE LEAVITT, DISTRICT
JUDGE,
Respondents,
and
THE STATE OF NEVADA,
Real Party in Interest.

No. 70591



FILED

FEB 16 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or mandamus directing the district court to reinstate a guilty plea and vacate a trial date.

*Petition denied.*

Phillip J. Kohn, Public Defender, and Christy L. Craig, Deputy Public Defender, Clark County,
for Petitioner.

Adam Paul Laxalt, Attorney General, Carson City; Steve B. Wolfson, District Attorney, Giancarlo Pesci, Chief Deputy District Attorney, and Christopher F. Burton, Deputy District Attorney, Clark County,
for Real Party in Interest.

17-5611

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

The indictment in this case charged petitioner Javier Righetti with murder under three theories. Without any plea negotiations, Righetti decided to plead guilty to murder, but only to two of the three theories alleged. This strategy, if it worked, would eliminate several of the grounds on which the State relied in seeking the death penalty against Righetti. Although the district court initially accepted the plea, problems arose because the defense did not tell the State, and the State did not understand, that Righetti was not pleading guilty to premeditated murder. After the miscommunication came to light, the district court determined that it had lacked authority to accept the guilty plea because it did not conform to the indictment and the State had not consented to amending it. The district court revoked its acceptance of the guilty plea and set the murder count for trial.

Righetti seeks a writ of prohibition or mandamus, directing the district court to enforce his plea. He maintains that he had the right to plead guilty to fewer than all theories alleged and that to force him to trial on a charge to which he has already pleaded guilty will violate the double jeopardy clauses of the United States and Nevada Constitutions. *See* U.S. Const. amend. V; Nev. Const. art. 1, § 8. We do not agree. When the charging document alleges multiple theories for a single offense, linking them with "and/or," an accused may not undercut the State's charging decision by pleading guilty to only some of the theories alleged

SUPREME COURT
OF
NEVADA

(O) 1947A

without the State's affirmative consent. The guilty plea was therefore defective and the district court appropriately set it aside. Because jeopardy does not attach to a defective guilty plea, Righetti's trial will not violate constitutional prohibitions against double jeopardy and may proceed.

## I.

The grand jury heard evidence that Righetti sexually assaulted a young girl in a tunnel beneath a freeway in Las Vegas, and sexually assaulted, tortured, and killed another young girl some months later near the same tunnel. Based on this evidence the grand jury indicted Righetti for murder, among other felonies, and the State filed a notice of intent to seek the death penalty. The indictment offers three theories to support the murder charge: that the killing was "(1) willful, deliberate, and premeditated, and/or (2) perpetrated by means of torture, and/or (3) committed during the perpetration or attempted perpetration of robbery and/or kidnapping and/or sexual assault."

Initially, Righetti entered a "not guilty" plea. Later, with no plea deal from the State, Righetti filed a written "Motion to Change Plea," supported by a declaration stating that he had "decided to plead guilty to the [indictment] in my case thereby bypassing the guilt phase of my trial and moving to the penalty phase." The motion did not disclose the defense's plan to plead guilty to only two of the three murder theories alleged, thereby abridging the State's proof at the penalty hearing. An on-the-record oral plea canvass followed, where the district court questioned Righetti regarding his understanding of the charges, the rights he was giving up by pleading guilty, and the consequences of his decision. The

district court then asked him to give a factual basis for each charge. As for the murder count, the following exchange took place:

> THE COURT: As to Count 10, murder with the use of a deadly weapon, on September 2nd, 2011, in Clark County, Nevada, what did you do that makes you guilty of that offense?
>
> THE DEFENDANT: Well, during the course of the kidnapping, sexual assault, and robbery, I stabbed [A.O.] causing her death.
>
> THE COURT: And did you that—that act was willful, deliberate, and premeditated—it's the other theory—okay, it was perpetrated by means of torture, and/or committed during the perpetration or attempt to perpetration [sic] of robbery and/or kidnapping, and/or sexual assault?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay. And you—use the deadly weapon, a knife; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is the State satisfied with that?
>
> THE PROSECUTOR: Yes, Judge.

The district court accepted Righetti's guilty plea and adjudicated him guilty of murder and all other charges.

Five days later, Righetti filed a "Motion to Strike Aggravating Circumstances and Evidence in Aggravation." Citing *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004), and *Wilson v. State*, 127 Nev. 740, 267 P.3d 58 (2011), Righetti argued that he had only pleaded guilty to two of the theories alleged in the murder charge—the theories that the murder was perpetrated by means of torture and committed during the course of a felony; that he "did not admit to a willful, premeditated, and deliberate killing"; and that this limited the aggravating circumstances the State

could use in seeking the death penalty. The State cried foul. It denied knowing about—or agreeing to—a guilty plea that eliminated premeditation and urged the district court to hold Righetti had pleaded guilty to all three theories of murder alleged.

In considering the motion, the district court judge observed that, while she understood Righetti's intentions when he offered his guilty plea, the written record did not establish that the State did. The parties and the district court then looked at the video recording of Righetti's plea canvass to clarify whether, and how, the miscommunication occurred. Apparently, when the district court judge asked Righetti if he had committed a willful, deliberate, and premeditated killing, Righetti's attorney, Christy Craig, interrupted the judge with nonverbal communication the written transcript doesn't capture; Craig and the district court judge make eye contact and Craig shakes her head. The district court judge took this to mean Righetti would be pleading guilty to felony murder and murder by torture but not premeditated murder. When the district court judge asked if the State "was satisfied with that" and the prosecutor replied "[y]es, Judge," the judge believed the State had agreed to Righetti pleading guilty plea to only two of the three theories of murder alleged. But the prosecutor denied having seen the nonverbal communication and averred that he believed Righetti had pleaded guilty to all charges and theories alleged in the indictment. After argument, the district court found that the prosecutor had missed the nonverbal interaction and invited the State to file a motion to set aside the guilty plea.

In its motion to set aside the guilty plea, the State argued that Righetti's right to plead guilty without a negotiation depended on him admitting guilt to the charges *as alleged* in the indictment. The State also accused the defense of trickery amounting to fraud in not forthrightly stating in its motion to change plea or at the plea canvass hearing that Righetti was not pleading guilty to premeditated murder. The defense responded that the district court accepted the guilty plea knowing it did not conform to the indictment and lacked authority to revoke its acceptance of the plea when the State had not timely objected. Although declining to find fraud, the district court declared it not "fair to hold the State to a burden that the cold record does not reflect" and ruled:

> At this time I'm going to reject the guilty plea, make a finding you do have a statutory right to plead guilty, but you don't have a statutory right to plead guilty and carve out a theory that the State has alleged and limit the State in their penalty hearing. So I'm going to reject the plea.

The district court reset the murder count for trial, and this petition followed.

## II.

### A.

Some background is helpful to place the legal issues presented by this petition in context. In *McConnell*, we held that if a defendant is found guilty of first-degree murder under a felony-murder theory, the prosecution may not use the same felony underlying the felony-murder as an aggravating circumstance to make him eligible for the death penalty. 120 Nev. at 1069, 102 P.3d at 624. In *Wilson*, we clarified that the rule announced in *McConnell* did not apply where a defendant pleaded guilty

SUPREME COURT
OF
NEVADA

(O) 1947A

6

to a murder count alleging both felony-murder and premeditated murder. 127 Nev. at 744, 267 P.3d at 60. Righetti interpreted these holdings to create a loophole: If he pleaded guilty to felony-murder but specifically did *not* plead guilty to premeditated murder, his case would fall outside of *Wilson* and he could take advantage of the rule in *McConnell*.[1] But to advance his reading of *McConnell* and *Wilson*, Righetti first had to enter a guilty plea to only two theories of first-degree murder when three were charged. Righetti concluded that so long as he pleaded guilty to the murder *count* he was free to select the *theories* of murder upon which to base his guilty plea, regardless of whether the State consented—the position he advances before this court.

B.

Although the facts of this case are unusual, the legal issues are straightforward. In our adversarial system, the State has an almost exclusive right to decide how to charge a criminal defendant, *Parsons v. Fifth Judicial Dist. Court*, 110 Nev. 1239, 1244, 885 P.2d 1316, 1320 (1994), *overruled on other grounds by Parsons v. State*, 116 Nev. 928, 936, 10 P.3d 836, 841 (2000); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), which includes the authority to allege that a defendant committed an offense by one or more alternative means, NRS 173.075(2). While a criminal defendant has a statutory right to tender a guilty plea, NRS 174.035(1), he does not have a right to plead guilty à la carte in order to avoid the State's charging decisions. Indeed, we have rejected attempts to

---

[1]We express no opinion as to the merits of Righetti's interpretation of *McConnell* and *Wilson*.

do just that, holding that a defendant's statutory right to plead guilty does not entitle him to plead guilty to a lesser-included offense without the State's consent. *Jefferson v. State*, 108 Nev. 953, 954, 840 P.2d 1234, 1235 (1992). To hold otherwise and allow such a plea would be to "undermine[ ] prosecutorial discretion in charging and the state's interest in obtaining a conviction on the other charges, which may be the more 'serious' charges." *State v. Eighth Judicial Dist. Court (Hedland)*, 116 Nev. 127, 138 n.10, 994 P.2d 692, 699 n.10 (2000).

The same logic applies when a defendant seeks to enter a guilty plea to only some of multiple *theories* supporting a charge. *State v. Bowerman*, 802 P.2d 116, 120 (Wash. 1990) (holding that a defendant does not have a right to plead guilty to only one theory of guilt when alternative theories are charged), *disapproved of on other grounds by State v. Condon*, 343 P.3d 357, 365 (Wash. 2015). In either instance, permitting a defendant to enter a guilty plea that does not conform to the charges as alleged in the charging document circumvents the State's charging authority and forces the State to amend the charging document and accept a deal it never offered. *Id.* And permitting a district court to accept such a guilty plea would allow the judiciary to invade a realm where the executive branch maintains almost exclusive control, in violation of separation-of-powers principles. *See* Nev. Const. art. 3, § 1 ("The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others."); *Sandy v. Fifth Judicial Dist. Court*, 113 Nev. 435, 440, 935 P.2d 1148, 1150-51 (1997) (observing that a district court runs

afoul of the separation-of-powers doctrine when it invades the prosecutor's legitimate charging authority).[2]

The State exercised its charging authority in this case by alleging that Righetti was guilty of first-degree murder because the killing was (1) willful, deliberate, and premeditated, and/or (2) committed by means of torture, and/or (3) committed during the perpetration or attempted perpetration of robbery and/or kidnapping and/or sexual assault. Although the phrase "and/or verges on the inelegant when used in general writing," it retains utility as "a formula denoting that the items can be taken either together or as alternatives." *Fowler's Modern English Usage*, at 53 (3d ed. 2000). By using "and/or," the State reserved the right to proceed to trial on any or *all* of the theories alleged. Without the State's consent, or an amendment of the indictment, Righetti could not abridge the State's charging discretion by pleading guilty to fewer than all the theories alleged.

---

[2]Righetti provides this court with no authority supporting a contrary position. He argues, for example, that he admitted guilt to the most serious charge against him (first-degree murder) and still faces a possible death sentence, and therefore his failure to admit that he committed a willful, deliberate, and premeditated murder did not thwart the State from pursuing more serious charges. But this ignores the fact that the purpose of his maneuver was to block the State from seeking the aggravating circumstances relating to the predicate felonies pursuant to *McConnell.*

## C.

Rejecting, as we do, Righetti's argument that he could plead guilty to two of the three theories alleged without the State's consent, we turn next to his assertion that the State explicitly or implicitly consented to his nonconforming guilty plea, which stands on similarly shaky ground. He first claims that the prosecutors in this case agreed to let him enter his plea fully understanding that he had not admitted guilt to each theory of murder alleged in the indictment. This contention is belied by the record. As the district court found, the transcript does not capture the miscommunication that occurred due to the nonverbal interaction initiated by Righetti's attorney—an interaction the prosecutor did not see. Substantial evidence supports this finding.

Righetti next presses us to hold the State implicitly consented to the nonconforming plea by not timely objecting, whether because the prosecutors were inattentive during the plea canvass or because they did not recognize the legal consequences of his plea. But this rewards and thus incentivizes less than forthright advocacy. Rather than squarely present his untested legal position to the district court and the agents of the State, so it could be developed and argued on the law and the facts, Righetti gave every indication before the plea canvass that he intended to plead guilty to the charges as alleged. Even assuming that the State should have been more alert to his maneuvering, Righetti provides no authority suggesting that a lawyer for a party has a duty to object to a nonverbal interaction he did not observe, and we decline to create one.

Regardless, we agree with the State that there was *no reason* to object because Righetti necessarily admitted that he committed a willful, deliberate, and premeditated murder when he pleaded guilty.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

Righetti places undue emphasis on the statements he made (or did not make) when asked to give a factual basis for his plea. Soliciting a factual basis is simply one of several ways for a district court to ensure that a defendant is pleading guilty voluntarily and intelligently; it does not operate to limit the charges or theories to which a defendant is admitting his guilt. *State v. Gomes*, 112 Nev. 1473, 1480-81, 930 P.2d 701, 706 (1996) (explaining that although it is "preferable" for the district court to elicit from a defendant an admission that he committed the charged offense, the defendant need only have an understanding of the nature of the charges alleged). Rather, a defendant who pleads guilty without the benefit of a negotiated agreement *necessarily* admits all of the factual and legal elements included in the charging document. *United States v. Broce*, 488 U.S. 563, 570 (1989) ("A guilty plea is more than a confession which admits that the accused did various acts. It is an admission that he committed the crime charged against him." (internal quotations and citations omitted)); *accord United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir. 1994) ("[A] defendant who makes a counseled and voluntary guilty plea admits both the acts described in the indictment and the legal consequences of those acts." (footnote omitted)).

Righetti's contention is similar to one considered and rejected in *United States v. Brown*, 164 F.3d 518 (10th Cir. 1998). In *Brown*, the defendant was charged with offenses relating to conduct that he claimed took place in Germany. *Id.* at 520. He pleaded guilty without a plea agreement and, during his plea canvass, purposefully did not say where he committed the crimes. *Id.* at 521. On appeal, he pointed to his intentional omission and argued that the trial court lacked jurisdiction because he committed his crimes in Germany. *Id.* at 520-21. The Tenth Circuit

Supreme Court
of
Nevada

(O) 1947A

11

rejected his argument, explaining that "the indictment alleged his criminal activity occurred within the United States and he admitted as much when he pleaded guilty unconditionally." *Id.* at 521. Here, the indictment alleged that Righetti committed murder under three theories—torture murder, felony-murder, and willful, deliberate, and premeditated murder—and Righetti pleaded guilty to the murder charge alleged in the indictment. Despite his carefully choreographed statements during the plea canvass, Righetti necessarily admitted that he committed the charge as alleged in the indictment by pleading guilty. *See id.* (holding that although "Brown was 'very careful' not to admit any conduct occurred within the United States . . . the strategy failed to realize the unconditional plea admitted all material allegations *already contained*" in the charging document); *see also Broce*, 488 U.S. at 570.

## D.

Because Righetti purported to enter a nonconforming guilty plea without the State's consent, express or implicit, the district court lacked the authority to accept it. *See generally Sandy*, 113 Nev. at 440, 935 P.2d at 1150-51; *Cox v. State*, 412 So. 2d 354, 356 (Fla. 1982) (holding that a guilty plea was invalid where state statute precluded a trial court from accepting a plea to a lesser-included offense without the consent of the prosecuting attorney). And, as Righetti disavows having had any intention of pleading guilty to premeditated murder when he offered his plea, the district court should have rejected it on that basis as well. *See generally Gomes*, 112 Nev. at 1480, 930 P.2d at 706 ("In order to be constitutionally valid, a plea of guilty or nolo contendere must have been knowingly and voluntarily entered." (internal quotation marks omitted)). Thus, the district court acted appropriately when it revoked its acceptance

of Righetti's guilty plea before his penalty hearing. *See People v. Bartley*, 393 N.E.2d 1029, 1029 (N.Y. 1979) (recognizing a court's power to revoke its improper acceptance of a plea before sentencing); *People v. Clark*, 70 Cal. Rptr. 324, 326 (Ct. App. 1968) (same); *see also United States v. Britt*, 917 F.2d 353, 358 (8th Cir. 1990) (recognizing that manifest necessity may permit a court to set aside a guilty plea over a defendant's objection).

### E.

The question remains whether a trial on charges to which Righetti has already pleaded guilty violates constitutional and statutory provisions prohibiting double jeopardy, entitling Righetti to writ relief. *Compare Jackson v. State*, 128 Nev. 598, 604, 291 P.3d 1274, 1278 (2012) (recognizing that the Double Jeopardy Clause protects a defendant from being prosecuted a second time after a conviction or acquittal), *with Glover v. Eighth Judicial Dist. Court*, 125 Nev. 691, 701, 220 P.3d 684, 692 (2009) ("A writ of prohibition [may] issue to interdict retrial in violation of a defendant's constitutional right not to be put in jeopardy twice for the same offense."). We hold that it does not, because double jeopardy principles are only implicated where jeopardy has attached, *see Martinez v. Illinois*, ___ U.S. ___, ___, 134 S. Ct. 2070, 2074 (2014), and jeopardy does not attach where, as here, a defendant's guilty plea is found to be defective, *see People v. Massie*, 967 P.2d 29, 38 (Cal. 1998) (citing authority which holds that jeopardy does not attach to a null and unlawful plea); *Cox*, 412 So. 2d at 356 (holding that jeopardy did not attach where the district court lacked authority to accept the plea).

The Supreme Court's decision in *Ohio v. Johnson*, 467 U.S. 493, 501-02 (1984), is instructive. In *Johnson*, the defendant was charged with offenses ranging from grand theft to murder. *Id.* at 494. Over the

State's objection, the trial court accepted guilty pleas to lesser offenses and granted the defendant's motion to dismiss the greater charges based on double jeopardy. *Id.* at 496. The Court held that the Double Jeopardy Clause did not bar the State from pursuing the greater charges, explaining that the Clause's purpose was to protect against "governmental overreaching" and nothing in the text or history of the Clause allowed the defendant to manipulate the plea process and then seek judicial protection. *Id.* at 502 ("Notwithstanding the trial court's acceptance of respondent's guilty pleas, respondent should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges.").

The Double Jeopardy Clause was designed to protect defendants from harassment and oppression, *id.* at 501-02; *Green v. United States*, 355 U.S. 184, 187-88 (1957), not to shield defendants like Righetti from their decisions to gamble on novel interpretations of law which ultimately prove unsuccessful, *see Ricketts v. Adamson*, 483 U.S. 1, 11 (1987) ("[T]he Double Jeopardy Clause does not relieve a defendant from the consequences of his voluntary choice." (internal quotation marks and ellipses omitted)). The prosecution in this case has not overreached; it has simply charged Righetti with several of the most egregious violations of society's laws and seeks to exercise "its right to one full and fair

opportunity" to present its case against him. *Johnson*, 467 U.S. at 502. It is entitled to do so.

We therefore deny Righetti's request for writ relief.

_____, J.
Pickering

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A